UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20

---

Mason Tenders District Council Welfare Fund, *et al.*,

Plaintiffs,

–v–

Shelbourne Construction Corp.,

Defendant.

---

19-cv-7562 (AJN)

MEMORANDUM OPINION &
ORDER

ALISON J. NATHAN, District Judge:

On October 16, 2019, Plaintiffs Mason Tenders District Council Welfare Fund, Mason Tenders District Council Pension Fund, Mason Tenders District Council Annuity Fund, Mason Tenders District Council Training Fund, Mason Tenders District Council Health and Safety Fund, and Dominick Giammona, as the Funds' Contributions/Delinquency Manager filed a motion for default judgment against Defendant Shelbourne Construction Corp. *See* Dkt. No. 11. For the reasons that follow, Plaintiff's motion is GRANTED.

## I.    BACKGROUND

The following facts are taken from the Complaint.  Plaintiffs Mason Tenders District Council Welfare Fund, Mason Tenders District Council Pension Fund, Mason Tenders District Council Annuity Fund, Mason Tenders District Council Training Fund, Mason Tenders District Council Health and Safety Fund (collectively, the "Funds") are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements and trust agreements.  Dkt. No. 1 ("Compl.") ¶ 6.  Defendant

Shelbourne Construction Corp. ("Shelbourne") is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of the Taft-Hartley Act § 301 (29 U.S.C. § 185). Compl. ¶ 12.

On or about July 1, 2002, Shelbourne and the non-party Union entered into the Master Independent Collective Agreement ("Independent Agreement") for the period stemming from July 1, 2002 through June 30, 2005. Compl. ¶ 14. The Independent Agreement has an "evergreen clause" that provides that the Agreement will remain in effect year-to-year after its initial terms, absent either signatory providing the other with written notice at least sixty days, but no more than ninety days, before the expiration date of the Independent Agreement. The Independent Agreement has never been modified, amended, or terminated, and it remains in effect. Compl. ¶¶ 15–16.

At all relevant times, furthermore, Shelbourne has been a member of the Building Contractors Association ("BCA"), which is the exclusive bargaining agent for all its members for purposes of bargaining with the non-party Union. Compl. ¶¶ 17–18. The BCA and the Union entered into a collective bargaining agreement for the period of July 1, 2010 through June 30, 2014, which was extended to the period of July 1, 2014 through June 30, 2018 by a memorandum of understanding between the BCA and the Union and then again to the period of July 1, 2018 through June 30, 2021 by an additional memorandum of understanding between the BCA and the Union (collectively, the original Agreement along with the subsequent two memoranda of understanding are referred to as the "BCA Agreement"). Compl. ¶ 19.

Among other things, these two Agreements require that Shelbourne "(i) submit to the Funds reports detailing the number of hours that Shelbourne employees performed work within the trade and geographic jurisdictions of the Union ("Covered Work"); (ii) make fringe benefit contributions to the Funds based on the number of hours of Covered Work its employees perform; (iii) deduct dues checkoffs and PAC contributions from the wages of employees who performed Covered Work, and remit said deductions to the Union; (iv) permit the Funds and/or their designated representatives to audit Shelbourne's books and records; and (v) apply interest and other fees and costs on delinquent  fringe benefit contributions."  Compl. ¶ 20.

Pursuant to the Agreements, the Funds ordered an audit of Shelbourne's books and records ("Audit") for the period of January 1, 2013 through March 28, 2017.  Compl. ¶ 21.  The Audit revealed that Shelbourne had failed to comply with its obligations to make fringe benefit contributions and remit and/or deduct dues checkoffs and PAC contributions for 13,182.50 hours of Covered Work performed by Shelbourne employees.  Compl. ¶ 22.  Indeed, since August 2015, Shelboume has failed to submit to the Funds reports detailing the number of hours that its employees performed Covered Work and has failed to make all required fringe benefit contributions and deduct and/or remit dues and PAC contributions.  Compl. ¶ 25.

On June 4, 2019, July 3, 2019, and July 23, 2019, the Funds demanded full and immediate payment of all unpaid amounts revealed through the Audit, to no avail.  Compl. ¶ 23– 24.  In addition, through shop steward reports, the Funds have determined that Shelbourne's failure to comply with its obligations has persisted past the Audit Period and stretched to at least November 2018.  *See* Compl. ¶ 26.  The Funds believe that Shelbourne continues to perform

Covered Work, and that it continues to fail its obligations under the Agreements (which include obligations to submit reports detailing the number of hours).  *See* Compl. ¶ 28.

On August 13, 2019, Plaintiffs filed this action, alleging that Shelbourne's failure to comply with the terms of the Agreements violated sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and section 301 of the Labor–Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185.  Dkt. No. 1.  Plaintiffs served the Defendant through the New York Secretary of State, and filed an Affidavit of Service on August 19, 2020.  Dkt. No. 7.  On September 11, 2019, Plaintiffs obtained a Clerk's Certificate of Default.  Dkt. No. 10.  Plaintiffs then moved for default judgment on October 16, 2019, requesting that the Court enter judgment on the amounts due as a result of the delinquency covering the Audit Period—January 1, 2013 through March 28, 2017.  Dkt. No. 11 ("Not. of Mot. for Default Judgment").  They served Shelbourne with all relevant documents through the Secretary of State, and filed an affidavit of service to that effect on October 18, 2019.  Dkt. No. 16.

## II.   DISCUSSION

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  The first step, entry of a default, "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown

by affidavit or otherwise, the clerk must enter the party's default.").  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)."  *Mickalis Pawn Shop*, 645 F.3d at 128.  Rule 54(c), meanwhile, states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor."  *WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706 (AJN), 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). "A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiffs must therefore substantiate [their] claim for damages with evidence to prove the extent of those damages."  *Broach v. Metro. Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *4 (S.D.N.Y. July 10, 2020) (citation and internal quotation marks omitted).

### A.  Jurisdiction and Standing

Before reaching the merits, the Court must first determine whether it has jurisdiction over this matter.  Defendant is subject to the personal jurisdiction of this Court because it does business in New York, Compl. ¶ 12.  Furthermore, venue is proper in the Southern District of New York under 29 U.S.C. § 1132(e)(2) because the Funds are administered in this District. Compl. ¶ 4.  The Court concludes that it has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C § 1132(e)(1), as Plaintiffs proceed under both ERISA and the LMRA.

5

Plaintiffs are employee benefit plans and multi-employer plans within the meaning of ERISA.  See Compl. ¶ 6 (citing 29 U.S.C. §§ 1002(1)–3, 1002(37), 1132(d)(1), 1145).  The Second Circuit has held that Section 1132(a)(3) of ERISA exclusively enumerates the plaintiffs that have standing to sue under ERISA, limiting such standing to a "participant, beneficiary, or fiduciary."  29 U.S.C. § 1132(a)(3); *see, e.g.*, *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 891–93 (2d Cir. 1983) (finding that 29 U.S.C. § 1132(a)(3) does not "authorize a pension fund to assert a cause of action," and that "the district court was without subject matter jurisdiction over the Fund's complaint").  "Although '[a]n employee benefit plan may sue . . . as an entity'" under Section 1132(d)(1), "this does not imply that plans may sue as non-enumerated plaintiffs under Section 1132(a), because 'the jurisdictional provisions of ERISA do not on their face authorize a pension fund to assert a cause of action.'"  *Broach v. Metro. Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *5 (S.D.N.Y. July 10, 2020) (quoting *Dist. Council 1707 Local 389 Home Care Emps.' Pension & Health & Welfare Funds v. Strayhorn*, 2013 WL 1223362, at *5 (S.D.N.Y. Mar. 25, 2013); *see also Pressroom Unions*, 700 F.3d at 891; *New Jersey Carpenters Annuity Fund v. Meridian Diversified Fund Mgmt., LLC*, 2011 WL 1842772, at *2 (S.D.N.Y. May 11, 2011) ("The funds themselves would have no standing to bring the claims involved here if they were asserted as ERISA claims.").  And as the court noted in *Broach*, the Funds cannot sue under Section 1145, which does not confer jurisdiction and instead "creates a substantive right" that an employer be required to make contributions to a multiemployer plan as specified in the collective bargaining agreement.  *Broach*, 2020 WL 3892509, at *5 (citing *Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 255 (S.D.N.Y. 2013)).

6

Notwithstanding this, the Court has subject matter jurisdiction over the ERISA claims in this lawsuit because Giammona is a fiduciary of the Funds.  *See* 29 U.S.C. § 1132(a)(3) (providing that "a participant, beneficiary, or fiduciary" may initiate an action to "enjoin any act or practice which violates any provision of this title or the terms of the plan," or "to obtain other appropriate equitable relief to (i) redress such violation or (ii) to enforce any provision of this title or the terms of the plan."); 20 U.S.C. § 1132(g) ("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").  As a practical matter, then, the fact that the Funds lack standing does not impact the amount of the recommended judgment against defendants, insofar as Giammona has standing to sue on the Funds' behalf.  *See Bricklayers Ins. Welfare Fund v. Manley Const. Corp.*, No. 13-CV-224 (RRM) (JO), 2014 WL 4699710, at *1 (E.D.N.Y. Sept. 22, 2014).  *See also* Dkt. No. 1 ¶ 10; Dkt. No. 13.  Because Giammona has standing to sue on the Funds' behalf, the Court has subject matter jurisdiction over the ERISA claims and may proceed to the merits.

Furthermore, "[u]nlike ERISA, the LMRA does not limit parties who may bring suit so long as the object of the suit is the enforcement of rights guaranteed by an agreement between an employer and a labor organization." *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. H.P. Kanady, Inc.*, No. CIV.A. 12-1470, 2012 WL 3185952, at *2 (D.N.J. Aug. 2, 2012) (citation omitted).  Because the LMRA covers all claims made by the Plaintiffs in this litigation, the Court has subject matter jurisdiction and may enter judgment as to all plaintiffs.

## B.  Procedural Requirements

When a party moves for default judgment, the Summons and Complaint must be properly served on the defaulting party.  *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-cv-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).  Here, Plaintiffs have satisfied this burden, having made a *prima facie* showing of proper service of the Summons and Complaint on Defendant by filing a process server's Affidavit of Service Through the Secretary of State pursuant to § 306 of the New York Business Corporation Law.  Dkt. No. 7. *See also Old Republic Ins. Co. v. Pac. Fin. Servs. of America, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

In addition, Plaintiffs have demonstrated that they have met all of the procedural requirements for filing a motion for default judgment pursuant to Fed. R. Civ. P. 55 and Local Rule 55.2, including taking the required procedural steps to provide proper notice to Defendant. Specifically, they requested a Certificate of Default, Dkt. No. 8, which was then entered by the Clerk of the Court,  Dkt. No. 10.  Then, they moved for default.  Dkt. No. 11.  They have also made a *prima facie* showing of proper service of the Motion for Default Judgment and the corresponding declarations by filing a process server's Affidavit of Service through the Secretary of State pursuant to § 306 of the New York Business Corporation Law.  Dkt. No. 16.

**C.  Liability**

On a default judgment motion, the defendant is deemed to have admitted all of the well-pleaded factual allegations contained in the complaint.  Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013).  But "because a party in default does not admit conclusions of law," the Court must nonetheless consider whether the plaintiff has pleaded facts sufficient to establish the defendant's liability with respect to each cause of action.  *See Zhen*

*Ming Chen v. Y Café Ave B Inc.*, 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019).  The legal

sufficiency of these claims is analyzed under the familiar plausibility standard articulated in *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009), aided by the additional step of drawing inferences in the movant's favor, *Belizaire v.*

*RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014).  *See also*

*WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706 (AJN), 2019 WL 1375470, at *5 (S.D.N.Y. Mar.

27, 2019).

Plaintiffs allege that Shelbourne is liable under sections 502(a)(3) and 515 of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145,

and section 301 of the Labor–Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. §

185.

Under 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a

multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement shall, to the extent not inconsistent with law, make such contributions in accordance

with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  "An ERISA

'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest

of an employer in relation to an employee benefit plan.'"  *Broach v. Metro. Exposition Servs.,*

*Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *6 (S.D.N.Y. July 10, 2020) (citing 29

U.S.C. § 1002(5)).  When an employer has violated its obligation to make contributions under 29

U.S.C. § 1145 a judgment may be entered against that employer in the amount of delinquent

contributions, plus interest and liquidated damages as prescribed by the governing documents.

*See* 29 U.S.C. § 1132(g)(2).  *See also Trustees of New York City Dist. Council of Carpenters*

*Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Duncan Partners, LLC*, No. 19-CV-8120 (RA), 2020 WL 4208368, at *3 (S.D.N.Y. July 22, 2020).

Plaintiffs have alleged all required elements to establish liability under 29 U.S.C. § 1145. First, Plaintiffs have sufficiently pleaded that Shelbourne is an employer under the terms of the statute.  Compl. ¶¶ 12, 45; *see also* Dkt. No. 12, Ex. 1 ¶ 12.  Second, Plaintiffs have established that the Funds are multiemployer plans, as defined by ERISA.  Compl. ¶ 6.  Furthermore, Plaintiffs have sufficiently pleaded that Shelbourne and the non-party Union entered into two collective bargaining agreements, as defined by the statute.  *See* Compl. ¶¶ 14–19.  Shelbourne entered into the Independent Agreement with the Union directly, Compl. ¶ 14, and the Building Contractors Association, of which Shelbourne is a member, entered into the BCA Agreement with the Union, Compl. ¶ 17–19.  And Plaintiffs have also established that, under the terms of the agreements, Shelbourne is required to, among other things, "make fringe benefit contributions to the Funds based on the number of hours of Covered Work its employees perform," "deduct dues checkoffs and PAC contributions from the wages of employees who performed Covered Work, and remit said deductions to the Union," and "apply interest and other fees and costs on delinquent fringe benefit contributions."  Compl. ¶ 20.  Furthermore, Plaintiffs' pleadings suffice to establish that Shelbourne has not made the required payments.  *See, e.g.*, Compl. ¶¶ 22, 26, 49.  Altogether, therefore, Plaintiffs have established that Shelbourne was

"obligated to make contributions" as an "employer" to the Funds in accordance with the Independent Agreement and the BCA Agreement.  *See Broach*, 2020 WL 3892509, at *6.

The same reasoning directs the Court's finding that the Plaintiffs have established liability under Section 301 of the LMRA, 29 U.S.C. § 185, for failing to remit dues or contributions under the terms of the Agreements.  "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a CBA."  *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans v. Air Wise Heating & Cooling, Inc.*, No. 18-CV-11569 (JGK) (GWG), 2020 WL 2846693, at *2 (S.D.N.Y. June 2, 2020), *report and recommendation adopted*, No. 18-CV-11569 (JGK), 2020 WL 3440503 (S.D.N.Y. June 23, 2020) (citation omitted). Under the terms of the Agreements, Shelbourne was required to make contributions to the union funds, and it failed to do so.  *See, e.g.*, Compl. ¶¶ 14–28.  Because this allegation establishes breach of the Agreements, it also establishes liability under Section 301 of the LMRA.  *See, e.g.*, *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011) ("Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement.").

Plaintiffs further assert several causes of action for common law breach of contract, arguing that they are entitled to relief because the Funds are intended third-party beneficiaries of the Agreements. *See* Compl. ¶¶ 41, 56.  Plaintiffs have not, however, provided any legal authority as to why these claims are not preempted by ERISA and the LMRA.  First, ERISA

provides for an exclusive civil enforcement scheme.  *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S.

41, 43, 47–48, 56–57 (1987); *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. L & L*

*Masons, Inc.,* 927 F. Supp. 645, 649 (S.D.N.Y. 1996) ("In general, a party may not enforce an

obligation that arises under ERISA through imposition of a common law contract claim, for such

a common law claim 'relates to' an employee benefit plan." (citing *Pilot Life.* 481 U.S. at 47–

48)).  *See also Trustees of Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Ben. Funds v. J.*

*& A. Contractors Corp.*, No. 14-CV-4935 (KBF), 2014 WL 4733504, at *2 (S.D.N.Y. Sept. 4,

2014).  And to the extent that the claim for unpaid dues checkoffs and PAC contributions is not

preempted by ERISA, as they do not relate directly to employee benefit plans, they are

preempted by the LMRA.  The LMRA "pre-empts any state-law claim [whose resolution] is

substantially dependent upon the analysis of the terms of an agreement made between the parties

in a labor contract," and its "scope of preemption is so broad that it displace[s] entirely any state

cause of action for violation of contracts between an employer and a labor organization."  *Mason*

*Tenders Dist. Council Welfare Fund v. Logic Const. Corp.*, 7 F. Supp. 2d 351, 359 (S.D.N.Y.

1998) (citation and internal quotation marks omitted).  And "cases in which a plaintiff alleges

that defendant violated the CBA itself" fall into the kinds of claims that "have been preempted

under § 301."  *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 423 (S.D.N.Y. 2013).  *See*

*also Pilot Life Ins. Co.*, 481 U.S. at 55 ("Congress was well aware that the powerful pre-emptive

force of § 301 of the LMRA displaced all state actions for violation of contracts between an

employer and a labor organization, even when the state action purported to authorize a remedy

unavailable under the federal provision."); *Ellis v. HarperCollins Publishers, Inc.,* No. 99–CV–

12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) ("Because the reported violation [of

state law] is based on a failure to pay union employees *in accordance with the terms of a CBA,* however, this violation is preempted by Section 301 of the [LMRA]." (emphasis added)).  In light of Plaintiffs' failure to provide any authority to the contrary, the Court concludes that Plaintiffs are not entitled to default judgment as to their common law claims.  But having considered all relevant factors, the Court concludes that Plaintiffs' well-pleaded allegations are sufficient to establish liability against Shelbourne under both ERISA and the LMRA.

### D.  Relief

#### 1.  Damages

"Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks."  *Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 (DLC) (SN), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).  "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).  "Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'"  *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC) (KNF), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais*, 183 F.3d at 155).  In this

analysis, the burden is on the plaintiff to establish its entitlement to recovery. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992).

Damages for violating Section 1145 are assessed under Section 1132(g)(2), which provides that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan: (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of —(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions]; (d) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (e) such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan[.]" 29 U.S.C. § 1132(g)(2).

The Plaintiffs seek $361,358.30 in principal unpaid fringe benefit contributions for the period stemming from January 1, 2013 through March 28, 2017.  Dkt. No. 12 at 22.  They also seek $74,888.91 in interest on that amount, and an additional $74,888.91 in liquidated damages. *Id.*  Furthermore, they seek restitution for the imputed cost of the Audit, which they aver amounts to $122,861.82.  *Id.*  They also seek attorneys' fees and costs in the amount of $4,973.39.  *Id.*  Plaintiffs further seek $27,663.05 in principal unpaid dues checkoffs and PAC contributions for the period stemming from January 1, 2013 through March 28, 2017, along with interest on those unpaid dues checkoffs and PAC contributions in the amount of $11,286.05.  *Id.*

14

First, Plaintiffs seek unpaid fringe benefit contributions for the period between January 1, 2013 and March 28, 2017 in the amount of $361,358.30.  *See* Dkt. No. 12 ¶¶ 31–38.  This amount was calculated by the Auditor and supported by the payroll records included in the Report attached to the Declaration of William Austin.  *See* Dkt. No. 14 ¶¶ 12–22, Ex. 1.  Having reviewed the evidence submitted by Plaintiffs, including the Audit Report, Dkt. No. 14, Ex. 1, and the various declarations and corresponding exhibits, the Court concludes that Plaintiffs have substantiated their request that they are entitled to payment of $361,358.30 for unpaid fringe benefit contributions.  *See also New York City Dist. Council of Carpenters v. Rock–It Contracting,* No. 09-CV-9479 (JGK) (AJP), 2010 WL 1140720, at *2 (S.D.N.Y. Mar. 26, 2010), *report and recommendation adopted*, No. 09 CIV. 9479 (JGK), 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010) ("[T]he Funds have provided sufficient proof, in the form of audit reports, of the principal amount of unpaid fringe benefit contributions . . . . The Funds should be awarded that amount.").  Because Shelbourne has neither appeared in the case nor "introduced any evidence that would suggest that these findings are inaccurate," *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans*, 2020 WL 2846693, at *2–3, the Court finds this to be sufficient. The Court finds Shelbourne to be liable for $361,358.30 in principal unpaid fringe benefit contributions for the period stemming from January 1, 2013 through March 28, 2017.

The Plaintiffs also seek $74,888.91 in interest on the unpaid contributions.  ERISA provides that following a successful action to recover unpaid contributions due under a plan, "the court shall award the plan . . . interest on the unpaid contributions," and that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  *See also Broach v. Metro.*

*Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *7 (S.D.N.Y. July 10, 2020).  In the ERISA context, interest should be calculated from the date a missed payment first became due.  *Trustees of Unite Here Nat. Health Fund v. New Mayflower Corp.*, No. 08-CV-3788 (DLC), 2009 WL 2222871, at *5 (S.D.N.Y. July 24, 2009).  Here, the Agreements adopt the rate prescribed under section 6621 of Title 26.  *See* Dkt. No. 13, Ex. 2, Art. VI, Section 17(f)–27(g); Dkt. No. 13, Ex. 3, Art. VI, Section 18(e)–18(f).  In support of their claim, Plaintiffs submitted a worksheet detailing the interest calculations on the unpaid fringe benefit contributions, Dkt. No. 12, Ex. 6.  Having concluded that Plaintiffs have adequately substantiated their stated claim on the amount due in interests on the unpaid fringe contributions, and in light of the fact that Shelbourne, having defaulted, has not presented any evidence to the contrary, the Court concludes that Plaintiffs are entitled to interest on the unpaid contributions at the rate provided under 26 U.S.C. § 6621.  Because the total amount in interest will have changed since October 16, 2019, however, Plaintiffs shall submit a supplemental affidavit consisting of the total amount and calculations of the interest due on the unpaid contributions.

For similar reasons, Plaintiffs are entitled to the requested amount of $74,888.91 in liquidated damages under 29 U.S.C. § 1132(g)(2)(C).  ERISA provides that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan an amount equal to the greater of . . . **(i)** interest on the unpaid contributions, or **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law). . . ."  29 U.S.C. § 1132(g)(2)(C).  Here, the

interests on the unpaid contributions provide the greater amount.  Accordingly, Plaintiffs are entitled to liquidated damages equivalent to the amount of interest on the unpaid contributions.

Next, Plaintiffs seek damages for the imputed cost of the Audit, which they aver amounts to $122,861.82.  The Plaintiffs derive this amount from the formula provided in the Agreements. *See* Dkt. No. 12 ¶¶ 51–56; Dkt. No. 13, Ex. 2, Art.VI, Section 17(g); Dkt. No. 13, Ex. 3, Art.VI, Section 18(c).  *See also* Dkt. No. 13, Ex. 2, Art.VI, Section 17(g) (The Independent Agreement authorizes courts grant "such . . . legal and equitable relief as the court deems appropriate"). Courts in this Circuit routinely grant such imputed costs if such costs are provided for in the Agreement.  *See, e.g.*, *Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 476 (S.D.N.Y. 2008), *on reconsideration in part* (May 12, 2008); *Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.,* 1999 WL 370667 (S.D.N.Y. June 7, 1999); *Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement v. Helmer–Cronin Const., Inc.,* 2005 WL 3789085 (S.D.N.Y. Oct. 24, 2005).  These numbers are also supported by the Audit. *See* Dkt. No. 14, Ex. 1 at 5.  Having reviewed Plaintiffs' calculations, the Court concludes that they are correct and finds that Plaintiffs are entitled to the requested amount.

The Court next addresses Plaintiffs' request for attorneys' fees and costs in the amount of $4,973.39.  Under ERISA, an award of attorneys' fees and costs is mandatory in an action for unpaid contributions. *See LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC*, 2020 WL 70947, at *4 (S.D.N.Y. Jan. 3, 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Broach v.*

*Metro. Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *8 (S.D.N.Y. July 10, 2020).  The total for the requested attorneys' fees is $4,429.00.  *See* Dkt. No. 15, Ex. 1 at 3.

"Reasonable hourly rates are the rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation, and the relevant community is the district in which the court sits. . . . Courts in this district have approved partner billing rates that range from $350 per hour to $425 per hour in ERISA delinquent contribution cases." *Broach*, 2020 WL 3892509, at *9 (citations and internal quotation marks omitted).  After reviewing the Plaintiffs' affidavit and corresponding exhibits, including the contemporaneous billing records for attorney and paralegal time, *see* Dkt. No. 15, Ex. 1, the Court concludes that Plaintiffs' request is reasonable.  The rates in question—$275.00 per hour for the shareholder of the firm who worked on the case; $225.00 per hour for the senior associate; $135.00 per hour for the associate; and $75.00 per hour for the paralegals—fall within the range of hourly rates that courts in this Circuit have awarded.  *See, e.g.*, *Mason Tenders District Council Welfare Fund v. Spray Force Systems, Inc.*, Case No, 17-CV-52 (LAK) (KNF), Dkt. No. 67 (S.D.N.Y. Nov. 11, 2018).  Furthermore, after reviewing the billing records, Dkt. No. 15, Ex. 1, the Court finds that the time expended on each task was reasonable.

In addition to the requested attorneys' fees, Plaintiffs also seek reimbursement of costs in the amount of $544.39, which includes the $400 filing fee and $144.39 for the cost of service of the Summons and Complaint upon Defendant through the Secretary of State.  *See* Dkt. No. 15, ¶ 15, Ex. 4.  To begin with, under ERISA, an award of reasonable costs is mandatory when Plaintiff prevails in an action for delinquent contributions. 29 U.S.C. § 1132(g)(2)(D).  Here, the costs sought by Plaintiff are both properly supported and reasonable.  *See Sullivan as Tr. of Stone*

*Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus.*
*Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL
2859006, at *15 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, No. 16-CV-3348
(AT) (DCF), 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020).   For these reasons, the Court agrees
that Plaintiffs are entitled to attorneys' fees and costs in the amount of $4,973.39.

Finally, the Court turns to Plaintiffs' request for $27,663.05 in principal unpaid dues
checkoffs and PAC contributions for the period stemming from January 1, 2013 through March
28, 2017.   Plaintiffs' requested amount was calculated by the Auditor and supported by the
payroll records included in the Report attached to the Declaration of William Austin.   *See* Dkt.
No. 14 ¶¶ 12–22, Ex. 1.   Having reviewed the evidence submitted by Plaintiffs, including the
Audit Report, Dkt. No. 14, Ex. 1, and the various declarations and corresponding exhibits, the
Court concludes that Plaintiffs have substantiated their request that they are entitled to payment
of $27,663.05 in principal unpaid dues checkoffs and PAC contributions for the period stemming
from January 1, 2013 through March 28, 2017.

Plaintiffs also seek interest on the unpaid dues checkoffs and PAC contributions.   They
seek to apply interest at an annual rate of nine percent, as provided for by New York Civil
Practice Law and Rules sections 5001 and 5004.   *See* N.Y. C.P.L.R. §§ 5001, 5004; *see also* Dkt.
No. 12 ¶¶ 69–71.   All told, that amounts to $11,286.05 through October 16, 2019—the date in
which Plaintiffs filed their default judgment moving papers.   The Agreements appear to be silent
as to the rates of interest to be applied to unpaid dues checkoffs and PAC contributions, and the
Plaintiffs do not cite specific provisions in the Agreement addressing the appropriate rate of
interest.   As a result, the "rate to apply for prejudgment interest on unpaid union dues is within

the court's discretion." *Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr., Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Fund, Scholarship*, No. 12-CV-4218 (KAM) (RML), 2013 WL 5460871, at *5 (E.D.N.Y. Sept. 30, 2013) (citing *Finkel v. Triple A Grp., Inc.,* 708 F. Supp. 2d 277, 287–88 (E.D.N.Y. 2010)).  Courts in this Circuit have applied the rate of nine percent pursuant to New York state law, and this Court finds Plaintiffs' claim reasonable.  *See, e.g.*, *Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Program Fund v. Ciro Randazzo Builders, Inc.*, No. 03CIV.2677(RMB)(JCF), 2004 WL 1152933, at *3 (S.D.N.Y. May 24, 2004), *report and recommendation adopted sub nom. Mason Tenders Dist. Council Welfare Fund v. Ciro Randazzo Builders, Inc.*, No. 03-CV-2677 (RMB) (JCF), 2004 WL 1462220 (S.D.N.Y. June 28, 2004).  Accordingly, the Court concludes that Plaintiffs are entitled to interest on the unpaid dues checkoffs and PAC contributions at an annual rate of nine percent.

### 2. Injunctive Relief

Plaintiffs also seek various forms of injunctive relief.  ERISA provides that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E); *see also Beck v. Levering,* 947 F.2d 639, 641 (2d Cir.1991) (per curiam).  "In a case such as this, where the defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of 'irreparable harm should the injunction not be granted.'" *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 349 (E.D.N.Y. 2009) (citation omitted).

Plaintiffs first seek an Order requiring Shelbourne to comply with the CBA and Trust

Agreement and with ERISA by submitting to an audit of the relevant books and records.  Dkt.

No. 12 ¶¶ 72–76.  They also seek an order enjoining Shelbourne from failing, refusing, or

neglecting to pay the amount owed pursuant to the CBA and ERISA, and enjoining Shelbourne

to permit and cooperate in the conduct of the requested Audit pursuant to the CBA and ERISA.

Dkt. No. 12 ¶¶ 77–93.  These requests for injunctive relief "promote the legislative intent of

ERISA."  *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239

F. Supp. 2d 26, 33 (D.D.C. 2002).  Having considered the record and Plaintiffs' arguments, the

Court agrees that Plaintiffs are entitled to this injunctive relief.

### E.  Entry of Judgment and Retention of Jurisdiction

Plaintiffs request that the Court immediately enter judgment on the claims arising out of

the Audit Delinquency and that it retain jurisdiction over any claims that might arise out of the

Subsequent Audit.  In arguing as much, Plaintiffs point to Rule 54(b), which allows for entry of a

final judgment as to fewer than all of the claims if the Court determines "that there is no just

reason for delay."  Fed. R. Civ. P. Rule 54(b).  And while Plaintiffs provide some support for the

proposition that there is no just reason for delay of an entry of judgment as to the delinquency

covering the judgment period, *see* Dkt. No. 12 ¶¶ 95–101, they cite no authority as to why the

Court should retain jurisdiction over any damages that might arise out of any delinquency that

might be identified as a result of the subsequent audit, particularly insofar as any such claims are,

at this juncture, speculative.

Within twenty-one days of this Order, Plaintiffs shall justify why the Court should retain

jurisdiction in this case with respect to additional delinquent fringe benefit contributions,

unremitted dues checkoffs, interest, statutory damages and attorneys' fees arising subsequent to the dates for which Plaintiffs have moved to have judgment be entered.

## III.    CONCLUSION

For the reasons stated herein, the motion for default judgment is GRANTED.  The Court grants judgment to Plaintiffs as follows: $361,358.30 for principal unpaid fringe benefit contributions for the period stemming from January 1, 2013 through March 28, 2017; interest on that amount at the rate provided by 26 U.S.C. § 6621; liquidated damages equivalent to the amount in interest due to Plaintiffs for the unpaid contributions; attorneys' fees and costs in the amount of $4,973.39; $27,663.05 in principal unpaid dues checkoffs and PAC contributions for the period stemming from January 1, 2013 through March 28, 2017; prejudgment interest on the unpaid dues checkoffs and PAC contributions at an annual rate of 9%; and $122,861.82 for the imputed costs of the audit.

Within twenty-one (21) days from the date of this Order, Plaintiffs shall justify why the Court should retain jurisdiction in this case with respect to additional delinquent fringe benefit contributions, unremitted dues checkoffs, interest, statutory damages and attorneys' fees arising subsequent to the dates for which Plaintiffs have moved to have judgment be entered.  Also within twenty-one (21) days from the date of this Order, Plaintiffs shall file a supplemental affidavit that includes the total amounts and calculations for prejudgment interest and liquidated damages, including the accrual of interest on the unpaid contributions and interest on the unpaid dues checkoffs and PAC contributions after October 16, 2019.

Furthermore, Plaintiff must also file a proposed final judgment, consistent with this

Order, for the Court's consideration within twenty-one (21) days from the date of this Order.

This resolves Dkt. No. 11.

     SO ORDERED.

Dated: November 30, 2020
      New York, New York

_____
          ALISON J. NATHAN
        United States District Judge